UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

Eastern District of Kentucky
FILED

JAN 29 2024

AT LEXINGTON
Robert R. Carr
CLERK U.S. DISTRICT COURT

CRIMINAL ACTION NO.  *5;23-143-DCR*

UNITED STATES OF AMERICA                                    PLAINTIFF

V.                          **PLEA AGREEMENT**

PRAGEETH S. HETTIARACHCHI                                   DEFENDANT

\* \* \* \* \*

1.      Pursuant to Federal Rule of Criminal Procedure 11(c), the Defendant will enter a guilty plea to Counts 1 and 2 of the Information, charging violations of 18 U.S.C. § 1343, Wire Fraud.   Pursuant to Rule 11(c)(1)(A), the United States will move at sentencing to dismiss all counts in the Indictment filed in Case No. 5:23-CR-00083-DCR.

2.      The essential elements of Count 18 U.S.C. § 1343 are:

(a) That the Defendant devised a scheme to defraud or to obtain money by materially false or fraudulent pretenses or representations;

(b) That the Defendant acted with the intent to defraud; and

(c) That in advancing, furthering, or carrying out the scheme, the Defendant transmitted or caused to be transmitted any writing or signal by means of wire communication in interstate commerce.

3.      As to Counts 1 and 2, the United States could prove the following facts that establish the essential elements of the offense beyond a reasonable doubt, and the Defendant admits these facts:

(a) Defendant Prageeth S. HETTIARACHCHI owned and operated ZAH LLC, doing business as Kentucky Dancesport Challenge and the Ballroom House, and ZAH Investments LLC, doing business as ZAH Construction LLC. Both companies were located in Lexington, in the Eastern District of Kentucky.

(b) For years, the Defendant has unlawfully obtained money from outside sources to bolster the revenue of his companies, ultimately with the aim of increasing his own personal wealth. He did this in two ways:

   i. From June 2013 until 2018, the Defendant convinced T.E., a client at the Ballroom House, to loan him hundreds of thousands of dollars or to obtain loans or credit cards, such as Capital One, in her name for his benefit, under the false pretense that he would repay her the money and give her 20% of his business. He failed to repay T.E., failed to pay off the loans, and never gave her one-fifth of his company.

   ii. During the COVID-19 pandemic, the Defendant obtained the following four Paycheck Protection Program ("PPP") loans from the United States Government, through Traditional Bank, for ZAH LLC and ZAH Investments LLC, making material misrepresentations on the loan application documents that either enabled him to get the loan or increased the loan amount. He did this by submitting false Schedule C forms to Traditional Bank that he altered from what he actually submitted to the IRS. To Traditional Bank, the Defendant reported significantly higher net profits than what he actually submitted to the IRS:

      1. On or about April 30, 2020, HETTIARACHCHI submitted a false application for a PPP loan on behalf of ZAH LLC. To support this application, he submitted a false 2019 Schedule C for ZAH LLC to Traditional Bank, claiming $344,355 in gross income, $200,540 in total expenses, and $143,815 in net profit. Per his tax returns filed with the IRS, he had much lower gross income and much higher total expenses, for a net loss of $51,458. As a result of claiming a higher net profit to the bank, HETTIARACHCHI obtained a $20,800 loan, the proceeds of which were deposited into his bank account on May 4, 2020.

      2. On or about April 30, 2020, HETTIARACHCHI submitted a false application for a PPP loan on behalf of ZAH Investments. To support this application, he submitted a false 2019 Schedule

2

C for ZAH Investments to Traditional Bank, claiming $281,758 in gross income, $161,352 in total expenses, and $120,406 in net profit. Per his tax returns filed with the IRS, he had much higher total expenses, for a net profit of only $28,406. As a result of claiming a higher net profit to the bank, he obtained a $20,800 loan, the proceeds of which were deposited into his bank account on May 4, 2020.

3. On or about January 14, 2021, HETTIARACHCHI submitted a false application for a PPP loan on behalf of ZAH LLC, based on the same false 2019 Schedule C described above. As a result, he obtained a $20,800 loan, the proceeds of which were deposited into his bank account on February 3, 2021.

4. On or about January 14, 2021, HETTIARACHCHI submitted a false application for a PPP loan on behalf of ZAH Investments, based on the same false 2019 Schedule C described above. As a result, he obtained a $20,800 loan, the proceeds of which were deposited into his bank account on February 9, 2021.

(c) In total, the Defendant unlawfully obtained $281,059 from T.E., and $83,200 in PPP loans.

4.    The statutory punishment for Counts I and 2 is imprisonment for not more than 20 years, a fine of not more than $250,000 or twice the gross gain or loss, and a term of supervised release of not more than 3 years. A mandatory special assessment of $200 applies, and the Defendant will pay this assessment to the U.S. District Court Clerk at the time of the entry of the plea.

5.    Pursuant to Rule 11(c)(1)(B), the United States and the Defendant recommend the following sentencing guidelines calculations, and they may object to or argue in favor of other calculations. This recommendation does not bind the Court.

a) United States Sentencing Guidelines (U.S.S.G.), November 1, 2023, manual, will determine the Defendant's guidelines range.

3

b) Pursuant to U.S.S.G. § 1B1.3, the Defendant's relevant conduct includes the facts provided in Paragraph 3 of this Plea Agreement pertaining to the unlawful obtainment of money from Victim T.E. and the United States Government.

c) Pursuant to U.S.S.G. § 2B1.1(a)(1), the base offense level is 7.

d) Pursuant to U.S.S.G. § 2B1.1(b)(1)(G), increase the offense level by 12 levels for a loss amount exceeding $250,000.

e) Pursuant to U.S.S.G. § 3A1.1, increase the offense level by 2 levels for the Defendant knowing or should have known that a victim of the offense was a vulnerable victim.

f) Pursuant to U.S.S.G. § 3E1.1 and unless the Defendant commits another crime, obstructs justice, or violates a court order, decrease the offense level by 2 levels for the Defendant's acceptance of responsibility. If the offense level determined prior to this 2-level decrease is level 16 or greater, the United States will move at sentencing to decrease the offense level by 1 additional level based on the Defendant's timely notice of intent to plead guilty.

g) Pursuant to U.S.S.G. § 4C1.1(a)(1), decrease the offense level by 2 levels because the Defendant meets all the criteria as a Zero Point Offender.

6.     No agreement exists about the Defendant's criminal history category pursuant to U.S.S.G. Chapter 4.

7.     The Defendant will not file a motion for a decrease in the offense level based on a mitigating role pursuant to U.S.S.G. § 3B1.2 or a departure motion pursuant to U.S.S.G. Chapter 5, Parts H or K.

8.     The Defendant waives the right to appeal the guilty plea and conviction. The Defendant waives the right to appeal any determination made by the Court at sentencing with the sole exception that the Defendant may appeal any aspect of the sentence if the length of the term of imprisonment exceeds the advisory sentencing guidelines range

4

contemplated in this Plea Agreement, that is, 21 to 27 months' incarceration. Except for claims of ineffective assistance of counsel, the Defendant also waives the right to attack collaterally the guilty plea, conviction, and sentence.

9.    The United States will recommend releasing the Defendant on the current conditions for future court appearances if the Defendant does not violate the terms of the order setting conditions of release.

10.    The Defendant consents to the imposition of a forfeiture money judgment in the amount of $393,998.87, which represents the amount of proceeds that the Defendant obtained as a result of the fraud scheme to which he is pleading guilty, including the fraud in obtaining PPP loans and the fraud against T.E.  The Defendant consents to the entry of a Preliminary Order of Forfeiture, pursuant to Federal Rule of Criminal Procedure 32.2.  If the Defendant fails to pay in full the forfeiture money judgment, he consents to the forfeiture of any other property of his up to the amount of the forfeiture money judgment, pursuant to 21 U.S.C. § 853(p), and further agrees that the conditions of 21 U.S.C. § 853(p)(1)(A)-(E) have been met.  The Defendant voluntarily and knowingly waives all provisions in Rule 32.2 pertaining to notice and/or the timing of forfeiture orders.  The Defendant also waives his/her right, if any, to a jury trial on forfeiture and all constitutional, legal, or equitable defenses to the forfeiture.  The Defendant agrees that this forfeiture is separate and distinct from any restitution, fine, or penalty ordered by the Court and shall survive bankruptcy.

5

11. Pursuant to 18 U.S.C. § 3663(a)(3), the Defendant agrees to pay restitution to the following victims and in the following amounts:

| Amount | Victim | Description |
|---|---|---|
| $83,200 | Small Business Administration | Proceeds from the 2020 PPP loans for ZAH LLC and ZAH Investments LLC, and the 2021 PPP loans for ZAH LLC and ZAH Investments LLC |
| $29,739.87 | Capital One (or its insurer) | Proceeds from the Capital One credit card the Defendant obtained in T.E.'s name, but never paid off |
| $128,475 | T.E. | Proceeds from bank loans, which the Defendant obtained in T.E.'s name, and T.E. had to pay off in December 2022 |
| $152,584 | T.E. | Proceeds from the personal loans the Defendant took from T.E. but never repaid |

The Defendant agrees that the restitution amount may include restitution for all losses caused by the Defendant's criminal conduct or through the commission of the offense of conviction, even if such losses resulted from crimes not charged or admitted by Defendant in the factual basis.

12. The Defendant agrees to cooperate fully with the United States Attorney's Office by making a full and complete financial disclosure. Within 30 days of pleading guilty, the Defendant agrees to complete, sign, and return to the United States Attorney's Office a financial disclosure statement or affidavit disclosing all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party, and disclosing any transfer of assets that has taken place within three years preceding the entry of this plea

6

agreement. Upon request, the Defendant agrees to provide the United States Attorney's Office with records verifying his/her financial information or with any releases required to obtain such records, with such releases being valid for a period extending 90 days from the date of sentencing. The Defendant will submit to an examination, which may be taken under oath and may include a polygraph examination. Prior to sentencing, the Defendant agrees to notify the United States Attorney's Office and obtain its consent before transferring, encumbering, or disposing of any interest in property with a value exceeding $1,000.00 owned or controlled directly or indirectly, individually or jointly, by the Defendant, including any interest held or owned under any name, including trusts, partnerships, and corporations. If the Defendant is ever incarcerated in connection with this case, the Defendant will participate in the Bureau of Prisons Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments. The Defendant agrees to notify the United States Attorney's Office of any material changes in his/her economic circumstances, as described in 18 U.S.C. § 3664(k), which occur prior to sentencing, within seven days of the event giving rise to the changed circumstances. If the Defendant fails to comply with any of the provisions of this paragraph, the United States, in its discretion, may refrain from moving the Court pursuant to U.S.S.G. § 3E1.1(b) to reduce the offense level by one additional level, and may argue that the Defendant should not receive a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a).

13.     The Defendant understands and agrees that, pursuant to 18 U.S.C. § 3613, whatever monetary penalties are imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States. If the Court imposes a schedule of payments, the Defendant agrees that it is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. The Defendant waives any requirement for demand of payment on any fine, restitution, or assessment imposed by the Court and agrees that any unpaid obligations will be submitted to the United States Treasury for offset. The Defendant waives any defense or objection to any action to enforce the collection of financial obligations to be imposed in connection with this prosecution, including, but not limited to, collection procedures authorized by the Federal Debt Collection Procedures Act, 28 U.S.C. § 3001, et seq., 18 U.S.C. § 3664, or 18 U.S.C. § 3613. The Defendant expressly authorizes the United States to obtain the Defendant's credit reports at any time. The Defendant authorizes the U.S. District Court to release funds posted as security for the Defendant's appearance bond in this case, if any, to be applied to satisfy the Defendant's financial obligations contained in the judgment of the Court. The Defendant authorizes the United States Attorney's Office to inspect and copy all financial documents and information held by the U.S. Probation Office.

14.     If the Defendant violates any part of this Agreement, the United States may void this Agreement and seek an indictment for any violations of federal laws, and the Defendant waives any right to challenge the initiation of additional federal charges.

8

15.    This document contains the complete and only Plea Agreement between the United States Attorney for the Eastern District of Kentucky and the Defendant. The United States has not made any other promises to the Defendant.

16.    This Agreement does not bind the United States Attorney's Offices in other districts, or any other federal, state, or local prosecuting authorities.

17.    The Defendant and the Defendant's attorney acknowledge that the Defendant understands this Agreement, that the Defendant's attorney has fully explained this Agreement to the Defendant, and that the Defendant's entry into this Agreement is voluntary.

CALTON S. SHIER, IV
UNITED STATES ATTORNEY

Date:    1/23/2024                    By:    _Kathryn Dieruf_
Digitally signed by
KATHRYN DIERUF
Date: 2024.01.23 16:33:23
-05'00'

Kathryn M. Dieruf
Assistant United States Attorney

Date: _January 19, 2024_

Piagee\xh S. Hettiarachchi
Defendant

Date: _January 19, 2024_

Noel Caldwell
Attorney for Defendant

9